Levine, J.
(concurring). Since 1909, the undeviating law and policy of this State has been to protect youths under the age of 16 who commit nonviolent acts from acquiring criminal status and its accompanying disabilities* — including impeachment on credibility in subsequent proceedings based upon juvenile delinquency adjudications arising from those acts. Despite the broad discretion which we have accorded trial courts in Sandoval determinations generally, it is absolutely clear that if defendant had committed in New York the act which gave rise to his criminal conviction in Maryland, it would have been error as a matter of law for the trial court to have exercised its "discretion” to permit cross-examination of defendant on the adjudication of juvenile delinquency that may have resulted. In my view, appropriate deference to this long-standing policy and due regard for fairness and consistency in the administration of the law mandates also precluding, as a matter of law, impeachment of a testifying defendant on the basis of a sister State conviction premised upon a *715 youthful act which, had it occurred in New York, could not have been the basis of a criminal conviction nor the subject of credibility impeachment in this State.
There is no dispute here concerning the controlling law if defendant had committed in New York at age 15 the nonviolent act underlying the Maryland conviction sought to be utilized for impeachment here. Under New York law, defendant’s commission of the subject drug offense would have fallen within the exclusive jurisdiction of the Family Court (Family Ct Act § 301.2 [1]), and would have exposed him, at worst, to a finding of juvenile delinquency (Family Ct Act § 352.1 [1]). It is further uncontestable that defendant could not have acquired a criminal record as a result of that adjudication, as the governing statute makes perfectly clear that "[n]o adjudication under this article may be denominated a conviction and no person adjudicated a juvenile delinquent shall be denominated a criminal by reason of such adjudication” (Family Ct Act § 380.1 [1]).
In addition to the fact that the status of a criminal conviction would not have attached to the adjudication, Family Court Act § 381.2 (1) further provides that:
"Neither the fact that a person was before the family court under this article for a hearing nor any confession, admission or statement made by him to the court or to any officer thereof in any stage of the proceeding is admissible as evidence against him or his interests in any other court.”
Accordingly, as the majority acknowledges, it is settled that a juvenile delinquency adjudication itself may under no circumstances be utilized to impeach a testifying defendant’s credibility in a subsequent criminal proceeding (see, People v Greer, 42 NY2d 170, 176; Richardson, Evidence § 506, at 494 [Prince 10th ed]).
The policy underlying the foregoing is not difficult to discern. "The historic purpose of the juvenile justice system has been the rehabilitation of children” (Sobie, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 301.1, at 263; see also, 1 Kerschensteiner, Callaghan’s Family Court Law and Practice in New York § 9:01, at 6 ["treatment and rehabilitation (are) the ultimate goals” of juvenile delinquency proceedings]). The statutory scheme clearly reflects the Legislature’s considered judgment that children are not fully responsible for every antisocial act they commit, and that it is *716 counterproductive to their development as responsible citizens to attach a criminal conviction, with its attendant stigma and practical consequences, to nonviolent acts which may result in many cases solely from immaturity or environment.
The issue before this Court then, is whether the result should be different because of the fortuity that defendant’s prior act was committed in a State which treats youths in a more draconian fashion than in New York. To be sure, the New York Legislature has not expressly barred cross-examinatian on such an extraterritorial conviction, as it has for New York Family Court adjudications. Nevertheless, we are not operating in a vacuum; the Legislature has spoken on the collateral effects of juvenile delinquency determinations in our State and has proscribed their use in subsequent proceedings. As we have stated:
"The public policy of the State is what the Legislature says it is, where the Legislature has spoken, and a policy so declared sometimes has to be followed by the courts in areas beyond the express reach of the statute for the sake of consistency in the administration of the law” (Matter of Steinberg v Steinberg, 18 NY2d 492, 497).
In accord with this principle, I conclude that, informed by the discernable policy determinations of our Legislature on this issue, barring cross-examination here is necessary "for the sake of consistency in the administration of [Sandoval] law” (id.).
The practical application of the majority’s holding today introduces a regrettable inconsistency into the Sandoval doctrine. Thus, two different defendants choosing to testify in a New York State criminal court may be subject to differing impeachment regarding adjudications arising from youthful acts, dependent solely on the locality where the prior act was committed. Surely, the probative and prejudicial natures of the adjudications, the traditional inquiries under Sandoval, do not usually differ because of the locus of the underlying act. Yet, as a result of this decision, a defendant who happened to commit the act as a youth in New York will be shielded as matter of law from impeachment, but the defendant who committed the act without the State may not. Such potential for disparate results is not jurisprudentially sound. Far from *717 advocating the "automatic overriding] of another jurisdiction’s treatment of the problem of youth crime or elimination of our well-established, workable Sandoval rules” (majority opn, at 713), I would merely rule for consistency in an area where the Legislature and this Court have already overridden use of certain adjudications for impeachment.
Furthermore, nothing in People v Kuey (83 NY2d 278) compels the majority’s result in the instant case. In Kuey, this Court held that it was proper to utilize a Florida youthful offender conviction as a predicate felony in New York — where Florida allowed its youthful offender convictions to serve as predicate offenses in its enhanced sentencing scheme — notwithstanding that defendant might have been granted youthful offender status had he committed the act in New York, in which case the conviction could not be so used. Because the decision to grant youthful offender status was discretionary in both States (id., at 284), the use of the conviction as a predicate did not impinge on any policy of this State. Kuey did not deal with an analogous situation to the instant case, for instance, if a sister State allowed for use as a predicate offense a conviction based on conduct that could only have been the basis for a juvenile delinquency adjudication in New York. I do not believe that any reading of Kuey would support the use of such a conviction as a predicate offense in this State.
Thus, the trial court erred as a matter of law in its Sandoval ruling. This Court has previously held, however, that errors in Sandoval determinations are subject to harmless error analysis, and I conclude that the error must be deemed harmless on this record (see, People v Shields, 46 NY2d 764, 765; see also, People v Williams, 56 NY2d 236, 240-241). The evidence against defendant, including his written and videotaped confessions to police, was overwhelming and there is no significant probability that he would have been acquitted if the error had not occurred and defendant had consequently chosen to testify (People v Crimmins, 36 NY2d 230, 242).
Chief Judge Kaye and Judges Simons and Smith concur with Judge Ciparick; Judge Levine concurs in result in a separate opinion in which Judges Titone and Bellacosa concur.
Order affirmed.

 Chapter 478 of the Laws of 1909, amending former Penal Law § 2186, provided: "A child of more than seven and less than sixteen years of age, who shall commit any act or omission which, if committed by an adult, would be a crime not punishable by death or life imprisonment, shall not be deemed guilty of any crime, but of juvenile delinquency only”.
The present Penal Law provides, for nonviolent offenses, that "a person less than sixteen years old is not criminally responsible for conduct” (Penal Law § 30.00 [1]).